IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| RAUL LOPEZ #02282264 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv099 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Raul Lopez, an inmate of the Texas Department of Criminal Justice (TDCJ) proceeding pro se, filed a petition for a writ of habeas corpus and was granted leave to proceed as a pauper. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Procedural History

Petitioner was convicted on August 14, 2019, by a jury in Smith County, Texas of continuous sexual abuse of a child and sentenced to life in prison. (Dkt. #8-1 at 150.) The Twelfth Court of Appeals affirmed the judgment on direct appeal on October 21, 2020. (Dkt. #8-20.) Petitioner submitted a state habeas application dated April 2, 2021. The Texas Court of Criminal Appeals denied relief without written order on August 10, 2022.

Petitioner filed the instant federal habeas petition, which is undated and bears no visible postmark, on March 18, 2023, and Respondent does not contest its timeliness or the Court's jurisdiction to hear it. The matter is ripe for review.

<u>Facts</u>

The Twelfth Court of Appeals summarized the facts and background of Petitioner's case as follows:

Appellant is the victim's uncle. According to the victim, Appellant first touched her in a sexual manner while they sat in his vehicle when she was approximately in the fifth grade. The sexual abuse escalated a few months later into penetration of her sexual organ. These acts continued to occur once or twice a week throughout her fifth and sixth grade year.

At the time, Appellant resided at his girlfriend's apartment, while the victim resided with her grandparents, along with her aunt and uncle and their nine children in a small home. Appellant ceased his relationship with his girlfriend, and after living alone or with his child for a period of time, he moved into the same home where the victim resided during her seventh grade year prior to her fourteenth birthday. Because of the home's small size and the large number of people living there, Appellant and the victim shared sleeping quarters in the living room, where the victim slept on a bed while Appellant slept on the sofa. Once Appellant moved into the home, he continued to commit various acts of sexual abuse on a near nightly basis. Furthermore, numerous acts of abuse occurred in Appellant's vehicle throughout this time period. These acts continued until two weeks prior to the victim's outcry when she was sixteen years old. According to the victim, Appellant also forced her to consume a "Plan B" pill and drink an herbal tea formulated to abort any possible pregnancy.

When the victim was in high school, she eventually disclosed the abuse to her boyfriend. Her boyfriend told his mother, who is also the victim's employer. Her boyfriend's mother notified the authorities. A forensic interviewer at the Children's Advocacy Center subsequently interviewed the victim, who described the abuse. The victim told the interviewer that after the abuse began, Appellant required her to perform sexual acts or alternatively send him nude photos of her in exchange for gifts he purchased for her. The victim told the interviewer that she sent the photos to Appellant on an iPad that he purchased for her because this would temporarily relieve her of having to perform physical sexual acts with Appellant. During the course of the investigation, Appellant learned that the victim disclosed the nature of the abuse, and the victim later explained that he struck her in the face and threatened to "end" her, as well as threatened to kill her boyfriend and "take his head off."

Based on the information gathered in the forensic interview, the police interviewed Appellant, who after initially denying any wrongdoing, ultimately admitted that he had sex with the victim on one occasion after she allegedly seduced him. He also consented to a search of his cell phone, which revealed nude photographs of the victim. The search of the phone also revealed messages Appellant sent to the victim such as "Why don't you love me anymore," and "You are what I want."

Based on this information, the authorities later obtained a warrant and went to arrest Appellant, who spoke only Spanish. When the police arrested Appellant, an officer

2

present to translate into Spanish the execution of the warrant told Appellant that they were there to arrest him for sexual assault of a child. The officer later explained at the ensuing trial that there is no direct translation for "sexual assault" in Spanish, and that the word or phrase used is more akin to an assault through physical violence such as strikes. The officer stated that Appellant replied in Spanish that he did not assault anyone, and that the sexual relationship was "consensual." Furthermore, the officer asked Appellant, "Didn't you know she was underage?" Appellant replied, "Yes."

Appellant was indicted for continuous sexual abuse of a child. Appellant pleaded "not guilty" to the offense and the matter proceeded to a jury trial. The court's charge included not only the offense of continuous sexual abuse of a child, but also the lesser included offense of aggravated sexual assault of a child. The jury ultimately found Appellant guilty of the continuous sexual abuse of a child offense and sentenced him to imprisonment for life.

*Lopez v. State*, No. 12-19-00314-CR, 2020 WL 6164469, at *1–2 (Tex. App. Oct. 21, 2020).

<u>Claims for Relief</u>

Petitioner raises four grounds for relief:

1.  The trial judge was not fair and impartial, in violation of Petitioner's right to due process. (Dkt. #1 at 6.)

2.  Trial counsel had a financial conflict of interest because moving to recuse the biased trial judge on Petitioner's behalf would result in losing future appointments by that judge. (*Id.*)

3.  Trial counsel was ineffective for failing to subject victim to effective cross-examination due to counsel's financial conflict. (*Id.* at 7.)

4.  Trial counsel was ineffective for failing to call the victim's boyfriend as a witness. (*Id.*)

<u>Standard of Review</u>

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). In the course of reviewing state proceedings, a federal court does "not sit as a

super state supreme court to review error under state law." *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007) (citations omitted); *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983).

Review of the petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under AEDPA, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas corpus relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "By its terms § 2254 bars re-litigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). AEDPA imposes a "highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation and internal quotation marks omitted).

With respect to the first provision, a "state court decision is 'contrary to' clearly established federal law if (1) the state court 'applies a rule that contradicts the governing law' announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts." *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (en banc) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003)). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). As such, "evidence later introduced in federal court is

4

irrelevant." *Id.* at 184. "The same rule necessarily applies to a federal court's review of purely factual determinations under § 2254(d)(2), as all nine Justices acknowledged." *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011).

For the purposes of section 2254(d)(2), a Texas court's factual findings are presumed to be sound unless a petitioner rebuts the "presumption of correctness by clear and convincing evidence." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (citing section 2254(e)(1)). The "standard is demanding but not insatiable; . . . [d]eference does not by definition preclude relief." *Id.* (citation and internal quotation marks omitted). The Supreme Court has held that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (citation omitted). The Supreme Court has also explained that the provisions of AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Federal habeas corpus relief is not available just because a state court decision may have been incorrect; instead, a petitioner must show that a state court decision was unreasonable. *Id.* at 694.

State prisoners filing petitions for a writ of habeas corpus are required to exhaust their state remedies before proceeding to federal court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1) (emphasis added). To satisfy this exhaustion requirement, a state prisoner must "fairly present" all of his claims to the state court. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). In Texas, all claims must be presented to the Texas Court of Criminal Appeals. *See Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985).

Claims that are not properly exhausted must be dismissed as procedurally defaulted unless the

petitioner demonstrates cause and prejudice or that a fundamental miscarriage of justice would result from a court's refusal to consider a claim. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *see also Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995). The Supreme Court explained this procedural default doctrine as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750. A habeas petitioner "meets the technical requirements for exhaustion" when state remedies are no longer available to him, but the procedural default doctrine exists to prevent inmates from effectively avoiding the exhaustion requirement by default. *Id.* at 732. Thus, defaulted claims in a mixed habeas petition are dismissed as procedurally barred. *See Fearance*, 56 F.3d at 642 ("Accordingly, this court is barred from reviewing the merits of Fearance's forced medication claims: The adequate and independent state ground doctrine 'bar[s] federal habeas when a state court decide[s] to address a prisoner's federal claims because the prisoner had failed to meet a state requirement.'") (quoting *Coleman*, 501 U.S. at 729–30); *see also Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001) (same).

<u>Discussion and Analysis</u>

1.  Biased trial judge

Petitioner asserts that the trial court erred by not permitting testimony from a state witness— Detective Moore—about his conversation with the victim about whether her testifying against Petitioner would result in her obtaining legal residency in the United States. (Dkt. #1 at 6.) He says the judge denied this exculpatory evidence upon motion by the prosecutor. (Dkt. #1-1 at 4.) He further

complains of the exclusion of testimony by the victim's boyfriend, which would have established that the victim fabricated the sexual abuse allegations to obtain legal residency. (*Id.* at 5.) He claims that this was "clear error," a "structural defect error," which prejudiced his defense. (*Id.*) He argues that exclusion of this "highly critical evidence" establishes that the trial judge was biased and predisposed to rule against him. (*Id.*)

Respondent asserts that this claim is procedurally defaulted because Petitioner raised it on direct appeal in the Sixth Court of Appeals but did not seek discretionary review in the Texas Court of Criminal Appeals, and it was barred on state grounds when he attempted to raise it later in state habeas proceedings. (Dkt. #16 at 8–13.) Alternatively, Respondent argues that the claim fails on the merits for the reasons the Twelfth Court of Appeals rejected it. (*Id.* at 13–18.)

The claim identified by the Twelfth Court of Appeals and its analysis of it are as follows:

In his second issue, Appellant contends that the trial court abused its discretion when it excluded evidence regarding [the victim's] motive for fabricating the accusations, namely, to achieve lawful immigration status.

### Standard of Review and Applicable Law

We review trial court decisions admitting or excluding evidence for an abuse of discretion, and under this standard the trial court's decision admitting or excluding evidence will be upheld so long as it is within the "zone of reasonable disagreement." *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018).

Texas Rule of Evidence 401 provides that evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence. TEX. R. EVID. 401. "Generally, all relevant evidence is admissible." *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009); TEX. R. EVID. 402. When determining whether evidence is relevant, it is important for courts to examine the purpose for which the evidence is being introduced. *Layton*, 280 S.W.3d at 240. "It is critical that there is a direct or logical connection between the actual evidence and the proposition sought to be proved." *Id.*

Texas Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403; *Gonzalez v. State*, 544 S.W.3d 363, 372 (Tex. Crim. App. 2018). "The probative force of evidence refers to how strongly it serves to make the existence of a fact of consequence more or less probable." *Id.*

Relevant evidence is presumed to be more probative than prejudicial. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). All evidence against a defendant is, by its nature, designed to be prejudicial. *See Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). Rule 403 does not exclude all prejudicial evidence; instead, it focuses on the danger of "unfair" prejudice. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). Evidence is unfairly prejudicial if it has the capacity to lure the factfinder into declaring guilt on a ground other than proof specific to the offense charged. *Manning v. State*, 114 S.W.3d 922, 928 (Tex. Crim. App. 2003). The trial judge has substantial discretion in balancing probative value and unfair prejudice. *See Powell v. State*, 189 S.W.3d 285, 288 (Tex. Crim. App. 2006).

A Rule 403 balancing test includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). A Rule 403 analysis may also consider whether there is any tendency of the evidence to confuse or distract the jury from the main issues as well as any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence. *See Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). "[T]hese factors may well blend together in practice." *Id.* at 641-42.

We review nonconstitutional error to determine whether it affected the defendant's substantial rights. TEX. R. APP. P. 44.2(b); *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). An error affects a substantial right if it had a substantial and injurious effect or influence on the verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A nonconstitutional error that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2(b).

Discussion

In Tyler Police Department Detective Judson Moore's investigative report, he wrote that he asked the victim whether she was told by anyone that she could receive her immigration papers in exchange for coming forward with the allegations against Appellant. She smiled and nodded her head in response. Detective Moore noted in his report that this response initially concerned him. After a hearing outside the jury's presence, the trial court excluded this evidence. Appellant argues that the trial court abused its discretion in this regard.

Detective Moore testified at the hearing that he did not know what the victim was thinking in response to this question. Rather, he stated that he needed to further investigate, and either confirm or dispel his concern and determine whether the victim's allegations were credible. At the hearing, Detective Moore explained that any brief concern he may have had was quickly dispelled upon completing his investigation. Therefore, the excluded evidence, considered in its entirety, would not support the proposition that [Appellant] now argues—that Detective Moore remained concerned that the victim lied to improve her immigration status. Instead, the actual evidence led to the opposite conclusion—that the victim delayed her disclosure of the abuse because she feared being deported if she made an outcry, which is what her family and Appellant

8

repeatedly told her. Therefore, the probative value of the evidence and Appellant's need for it is slight, especially when considered in its proper context.

Furthermore, even if the trial court should have admitted the evidence, Appellant was not harmed by its exclusion. First, it is undisputed that the victim's DACA status prevents her removal from the country irrespective of her cooperation in this criminal investigation. Second, Appellant's counsel questioned the victim extensively concerning her motive to fabricate the allegations in order to obtain her lawful residency in the country. The jury also heard evidence from the victim's aunt, who testified that neither she nor the rest of her family believed the victim's allegations, and that they thought she fabricated the allegations in order to improve her immigration status. When the trial court excludes evidence, and substantially the same or similar evidence is admitted elsewhere, any error is harmless. *See Mosley v. State*, 983 S.W.2d 249, 258 (Tex. Crim. App. 1998) (op. on reh'g) (explaining that harm from the erroneous exclusion of evidence may be mitigated by the admission of similar evidence). The trial court likewise allowed defense counsel to argue to the jury that the victim fabricated the allegations in order to obtain the lawful status to remain in the country. Finally, Appellant wanted to offer the evidence to show that the victim falsified the allegations. Yet defense counsel also argued to the jury, due to his admission of a single instance of sexual intercourse, that he is at most guilty of aggravated sexual assault of a child, not continuous sexual abuse of a child. Appellant therefore acknowledges with this jury argument that the allegations are not totally fabricated. Accordingly, we hold that the trial court did not abuse its discretion in excluding the evidence. Appellant's second issue is overruled.

*Lopez v. State*, No. 12-19-00314-CR, 2020 WL 6164469, at *4–5 (Tex. App. Oct. 21, 2020). Petitioner did not seek discretionary review of this claim on direct appeal.

In his later state habeas application, Petitioner repeated this claim about the excluded evidence of the victim's motive to lie. (Dkt. #14-2 at 27.) This time, he couched the claim as evidence of trial court bias, as he does here. (*Id.*) The trial court found that Petitioner had raised the same claim on direct appeal and that the Twelfth Court of Appeals had rejected it. (Dkt. #14-2 at 92.) It then found that the claim was barred from further review pursuant to state law:

> The law provides that a claim that was previously raised and rejected on direct appeal is not cognizable on habeas review. *Ex parte Reynoso*, 257 S.W.3d 715, 723 (Tex. Crim. App. 2008); *see also Ex parte Schuessler*, 846 S.W.2d 850, 852 (Tex. Crim. App. 1993) (" . . . habeas corpus is traditionally unavailable to review matters which were raised and rejected on appeal . . .").

(Dkt. #14-2 at 92.) The Texas Court of Criminal Appeals denied relief without written order on the

basis of the trial court's findings and its own independent review. (Dkt. #14-1.)

The Court finds that Petitioner's current claim is so lacking in merit that it is unnecessary to determine whether it is the same claim that was barred from state habeas review by state law. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Petitioner claims in this Court that the trial court's evidentiary rulings establish the trial judge's bias against him in violation of his right to due process. The Due Process clause "requires a fair trial, 'before a judge with no actual bias against the defendant or interest in the outcome of his particular case.'" *Richardson v. Quarterman*, 537 F.3d 466, 474 (5th Cir. 2008) (quoting *Bracy v. Gramley*, 520 U.S. 899, 905 (1997)). But the Fifth Circuit has explained the steep challenge of establishing bias:

> However, "bias by an adjudicator is not lightly established." *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1052 (5th Cir.1997). Courts ordinarily "presume that public officials have properly discharged their official duties." *Bracy v. Gramley*, 117 S.Ct. at 1799 (internal quotation marks and citations omitted). General allegations of bias or prejudice are insufficient to establish a constitutional violation. *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 106 S.Ct. 1580, 1585, 89 L.Ed.2d 823 (1986) (holding that general allegations of a judge's frustration with insurance companies are not sufficient to force recusal under the Due Process Clause from a case in which an insurance company was a party).

*Id.* A judge is presumptively biased in circumstances including "(1) when the judge 'has a direct personal, substantial, and pecuniary interest in the outcome of the case,' (2) when he 'has been the target of personal abuse or criticism from the party before him,' and (3) when he 'has the dual role of investigating and adjudicating disputes and complaints.'" *Id.* at 475 (quoting *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008)). And actual bias may be established if a judge's rulings "reveal favoritism or antagonism such that fair judgment is impossible." *Buntion*, 524 F.3d at 673.  However, "[j]udges do not have to be naive," and "opinions formed

10

based on the facts at trial" do not constitute judicial bias "unless they show a deep-seated, extreme favoritism or antagonism." *Id.*

Petitioner does not point to any facts that would support a finding of presumed or actual bias in this case. He simply disagrees with the judge's evidentiary rulings. That is not enough to support his claim of bias. *See United States v. Reeder*, 207 F. App'x 435, 437 (5th Cir. 2006) ("The Reeders also argue that the district court should have recused itself. The apparent basis for this argument is that the district court made evidentiary rulings adverse to the defendants. Adverse rulings alone do not give rise to grounds for recusal."). The Supreme Court has explained that adverse rulings cannot establish bias without some proof that they are based on extrajudicial reasons or obvious favoritism:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *See United States v. Grinnell Corp.*, 384 U.S., at 583. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal.

*Liteky v. United States*, 510 U.S. 540, 555 (1994). The rulings cited by Petitioner do not satisfy that standard. As explained above, the Twelfth Court of Appeals found in affirming Petitioner's conviction that the value of the excluded evidence was slight and that the judge allowed the jury to hear other evidence and cross-examination about the possibility that the victim had falsified her report to improve her immigration status. Trial court rulings that are harmless or even correct under the applicable law—without more—do not establish bias.

Petitioner has not established any bias on the part of the trial judge and is not entitled to relief on this claim regardless of whether it is exhausted.

11

2.   Ineffective-assistance claims

Federal claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing Petitioner; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive Petitioner of a fair trial. *Id.* at 687. To meet the first prong, Petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [he] must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688–89. The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

As discussed above, a federal court may not grant habeas relief on a claim that has been rejected on the merits by a state court, unless the petitioner shows that the state court's decision "was contrary to" law clearly established by the United States Supreme Court, that it "involved an unreasonable application of" such law, or that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. §§ 2254(d)(1) and (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Thus, when an exhausted claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was

12

unreasonable." *Harrington v. Richter*, 562 U.S. at 101. As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

> *Id.* (internal quotation marks and citation omitted).

Petitioner raised several ineffective-assistance claims in his state habeas application. The state court correctly identified and explained the applicable *Strickland* standard (Dkt. #14-2 at 100), and it summarized and rejected Petitioner's claims as follows:

> Applicant alleges under his second, third, and fourth grounds for relief that his trial attorney, Mr. Mitch Adams, rendered him ineffective assistance of counsel for a variety of reasons.

> . . .

> The State requested, and the Court ordered, an affidavit from trial counsel, Mr. Mitch Adams, responding to Applicant's ineffective assistance claims. Said affidavit was timely filed with the Court and has been taken into consideration by the Court.

> As best can be determined, Applicant['s] second ground asserts that counsel was ineffective for failing to file a *pretrial* motion to recuse former Judge Christi Kennedy as a "bias and not impartial Judge" based upon her subsequent exclusion *at trial* of allegedly exculpatory evidence.

> Notwithstanding that a motion to recuse cannot be filed until there are actual grounds for the motion in existence, a discretionary ruling by a trial court on the admissibility of evidence cannot serve as a basis for a valid recusal motion. *See United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) (adverse rulings by trial court do not establish bias because rulings do not "stem from an extrajudicial source."); *Kemp v. State*, 846 S.W.2d 289, 306 (Tex. Crim. App. 1992) (same).

> Applicant's third ground complains that Mr. Adams failed to subject the victim to a "meaningful adversarial testing" during cross-examination due to "an actual conflict of monetary interest."

> The record does not support this claim where it shows that Mr. Adams conducted a lengthy and comprehensive cross-examination of victim and later recalled her as a defense witness. Moreover, Applicant fails to specifically allege what evidence Mr. Adams should have elicited from the victim on cross-examination but did not. And, he

has entirely neglected to explain how that unspecified evidence could have changed the outcome of his trial to his favor—particularly where the jury heard evidence that he repeatedly confessed to sexually assaulting the victim while knowing she was under the age of consent.

Mr. Adams comments in his affidavit that although he was not employed by Judge Kennedy, it was in his best interest, financially, to provide competent representation to his clients in order to remain on his contract with Smith County to represent indigent criminal defendants.

Applicant's fourth ground alleges that Mr. Adams was ineffective for failing to interview and then call the "victim's boyfriend" to testify at trial. Applicant claims that this individual "had knowledge that the victim fabricated the allegations against [him]." This bare assertion is at complete odds with the record, which includes the undisputed evidence that Applicant repeatedly confessed that he had sexually assaulted victim while she was under the age of consent.

In addition, Mr. Adams explains that he was appointed an investigator to help prepare for trial and that his investigator interviewed the State's witnesses, including the victim's boyfriend. The boyfriend said that when he found out that Applicant was sexually abusing the victim, he informed his mother, who happened to be the victim's employer. According to the trial testimony, his mother then contacted CPS to report the sexual abuse.

Based upon the interview, Mr. Adams states that he decided that the victim's boyfriend would not present any evidence that would have likely served to discredit the victim. In light of the trial testimony, including Applicant's confessions, this was a reasonable decision. The victim's boyfriend, had he testified would have likely strengthened the State's case because he believed the victim and was largely responsible for CPS being alerted to Applicant's sexual abuse of the victim.

Applicant further fails to argue how that strategic decision resulted in any prejudice such that there is "a reasonable probability, sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different" had Mr. Adams called the victim's boyfriend as a witness.

. . .

Under his second, third and fourth grounds, Applicant fails to present any facts or authority showing that Mr. Adams rendered him ineffective assistance of counsel for the reasons asserted under those grounds.

In addition to Applicant's bare assertions regarding Mr. Adams, he also fails to show how the actions of counsel resulted in a level of harm that could have reasonably impacted the outcome of his case. Applicant thus has not met his two-pronged burden under *Strickland* to show that Mr. Adams rendered him ineffective assistance of counsel and that he suffered a resultant prejudice.

(Dkt. #14-2 at 99–102 (internal paragraph numeration and citations omitted).) The TCCA denied relief

on these claims without written opinion, based in part on these findings.

14

With this standard and background in mind, the Court will address Petitioner's current claims.

a.  Conflicted counsel

Petitioner asserts that he was denied the right to the effective assistance of conflict-free counsel because his attorney would not move the trial judge to recuse himself for bias or challenge his erroneous rulings because the attorney depends financially on appointments from the judge. (Dkt. #1-1 at 7.) The Fifth Circuit has explained the standard for such a conflict-of-interest claim:

> To succeed on his conflict of interest claim, Barbee had to show that "an actual conflict of interest adversely affected" trial counsels' performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348–49 (1980); *Beets v. Scott*, 65 F.3d 1258, 1271 (5th Cir. 1995). An "actual conflict" exists when counsel "is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). An "adverse effect" requires proof that "'some plausible alternative defense strategy or tactic' could have been pursued but was not because of the actual conflict impairing counsel's performance." *Id.*

*Barbee v. Davis*, 660 F. App'x 293, 313 (5th Cir. 2016).

The state court reasonably found, based on the evidence before it, that Petitioner's trial counsel did not suffer from an actual financial conflict in this case. Counsel's affidavit expressed his belief that maintaining his contract depended upon his providing competent representation:

> I was a contract attorney for indigent defendants in that court at that time, so I had no reason to fear losing business and revenue if I thought that my defense, tactics, and demeanor would alienate Judge Kennedy. In fact, it is my belief that Judge Kennedy would have concerns about my ongoing representation of indigent defendants in that court had she suspected that I was not providing Applicant with an aggressive defense.
> . . .
> Furthermore, I value my law license far too much to risk losing by providing ineffective assistance of counsel to a court appointed client.

(Dkt. #14-2 at 86–7.) Further, counsel provided plausible, alternative explanations for his actions, including not moving the trial judge to recuse (no basis for doing so). (*Id.* at 85.)

Petitioner's conclusory assertion that counsel was conflicted because of his reliance on appointments to represent indigent defendants would mean that all defense attorneys who regularly

seek or accept such appointments are conflicted. Such inherent conflict is not found in the law, and Petitioner's unsupported assumption cannot overcome counsel's own testimony about his true interests and reasons for his behavior. *See Barbee*, 660 F. App'x at 304–5, 312–13 (finding no actual conflict where petitioner claimed that counsel's "financial interest in continuing to receive court appointments . . . created a conflict of interest that caused [counsel] to pressure him to plead guilty, fail to move for a change of venue despite prejudicial pretrial publicity, fail to investigate his innocence, confess his guilt to the jury, and fail to present significant mitigating evidence").

Finally, even if Petitioner's claim had any merit, he has not established that the state court's rejection of it was unreasonable as required to merit federal habeas relief. Petitioner is not entitled to relief on this claim.

b.    Counsel's failure to cross-examine victim

Petitioner claims that "counsel failed to subject the state's witness (victim) to meaningful adversarial cross-examination due to conflict." (Dkt. #1-1 at 10.) Citing the same alleged financial conflict discussed above, Petitioner faults counsel for failing to question the victim about her fabrication of the sexual assault charges to obtain legal U.S. residency. (*Id.* at 10–11.)

A review of the record establishes that counsel's initial cross-examination of the victim before the jury comprises seventeen pages of transcript. (Dkt. #8-14 at 63–80.) He asked her about whether she had any concerns about having to leave the United States and about whether anyone had talked to her about any connection between her allegations and obtaining documents to stay in the United States. (Dkt. #8-14 at 77–80.) He then sought to ask her additional questions about any applications by her for a green card or citizenship, on the basis that "it goes to the Defense's theory that she is—has made an outcry because she understood that if she did so, she could avoid being removed from the United States." (Dkt. #8-14 at 81.) During a jury-out offer of proof, counsel questioned the victim about her

16

efforts to stay in the United States, and she indicated that she had applied for and received a DACA card and social security card when she was in the eighth or ninth grade, but she did not have a green card. (Dkt. #8-14 at 83–85.) The prosecutor objected to this line of questioning on the basis that seeking and obtaining immigration documents in eighth or ninth grade was irrelevant to the victim's sexual assault report made when she was in the tenth grade and that the discussion of her residency status would be more prejudicial to the victim than probative. (Dkt. #8-14 at 86.) The court sustained the objection and excluded this evidence. (*Id.* at 86–7.) Specifically, the court sustained the objection on the basis of relevance, explaining that "it doesn't show bias or motive for testimony because there's no connection." (*Id.*)

Counsel later re-called the victim to the stand as part of the defense case and specifically asked her whether she had ever told her aunt that her employer had told her what to say about the Petitioner and that she was fabricating her allegations "in order to get immigration papers." (Dkt. #8-14 at 180.) The victim denied having made those statements to her aunt and said her employer simply told her to tell the truth. (*Id.*) Counsel then called the victim's aunt, who testified that the victim told her that she was accusing Petitioner because she wanted to obtain legal documents and had been told she would receive them if she made her allegations. (Dkt. #8-14 at 188.) Unfortunately for the defense, the aunt acknowledged on cross-examination that Petitioner had admitted to her that he had sex with the victim. (Dkt. #8-14 at 194–96.)

Petitioner does not clearly identify what further questioning counsel should have attempted of the victim or explain how it would have changed the outcome of his case. Counsel made every effort permitted by the trial court to impugn the victim's credibility with an immigration-related motive to lie about Petitioner. The victim flatly denied telling her aunt that she was fabricating her report to improve her immigration status, and the jury was entitled to believe her. Petitioner appears to suggest that the

17

victim might have confessed a fabrication for the same reason to her boyfriend and that counsel should have asked her about that, but there is no reason to believe that either her response or the jury's assessment of it would have been any different. Moreover, as the state court aptly observed, further pursuit of this fabrication theory would have been futile in light of the evidence that Petitioner repeatedly admitted to having a "consensual" sexual relationship with the minor victim.

Petitioner has not demonstrated that counsel's performance in examining the victim was either objectively deficient or prejudicial to the outcome of his case. He thus fails to establish that the state court's rejection of this claim is erroneous, much less that it is so unreasonable as to be beyond fairminded disagreement. He is not entitled to relief on this claim.

       c.   Counsel's failure to interview and call victim's boyfriend as a witness

Petitioner claims that counsel should have presented evidence that the still-minor victim was sexually involved with her adult boyfriend and that such evidence would have caused the jury to question her allegations of sexual abuse against Petitioner. (Dkt. #1-1 at 14.) He suggests the boyfriend could also have testified to the victim's "ploy to attain legal U.S. residency documents" by fabricating her report of sexual abuse. (Dkt. #1 at 7.)

Petitioner does not offer any proof of what the boyfriend's testimony would have been. His "conclusory statements regarding the content of the uncalled witness[']s testimony are insufficient to demonstrate ineffective assistance." *Gregory v. Thaler*, 601 F.3d 347, 353 (5th Cir. 2010). The Fifth Circuit has explained the high standard applicable to such claims:

> An applicant "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). To prevail on an ineffective assistance claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).
> Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by

18

evidence indicating the witnesses's willingness to testify and the substance of the proposed testimony. *See Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir.2007). The decision whether to present a witness is considered to be essentially strategic, and "speculations as to what [uncalled] witnesses would have testified is too uncertain." *Alexander*, 775 F.2d at 602.

*Gregory*, 601 F.3d at 352–53. Petitioner has not satisfied that standard.

Counsel testified by affidavit in the state habeas proceedings that he decided not to call the boyfriend as a witness after the defense investigator interviewed him. (Dkt. #14-2 at 86.) Such strategic choices, made after reasonable investigation, "are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). The evidence at trial was that when the boyfriend heard the victim's account of sexual abuse, he gave the information to his mother and was thus instrumental in causing the official report of the crime. Counsel determined that the boyfriend would not have discredited the victim, and there is no proof in the record that the boyfriend was aware of any plot to fabricate the report.

Petitioner does not explain what impact evidence of the victim's alleged sexual relationship with her boyfriend would have had on his case. He cannot even establish with any degree of likelihood that such evidence would have been permitted by the trial court. *See Lewis v. State*, No. 14-21-00691-CR, 2023 WL 4873306, at *12 (Tex. App. Aug. 1, 2023), *petition for discretionary review filed* (Oct. 3, 2023) (discussing Texas "'rape shield' law intended to shield a sexual-assault victim from the introduction of highly embarrassing, prejudicial, and irrelevant evidence of prior sexual behavior" and further determining that "the probative value of the evidence, if any, of [victim's] sexual history was substantially outweighed by the prejudicial effect of the evidence"). But even assuming that the boyfriend would have provided such evidence, and the trial court would have allowed it, there is no reasonable probability that it would have avoided Petitioner's conviction in light of his multiple admissions to having had sex with the victim.

Petitioner has not established that counsel was ineffective in deciding not to call the boyfriend

19

to testify or that the state court unreasonably rejected this claim. He is not entitled to relief.

Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A district court may deny a certificate of appealability *sua sponte* because the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

To obtain a certificate of appealability, the petitioner must make a substantial showing that the petitioner has been denied a federal right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). To do this, he must demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. *James v. Cain*, 50 F.3d 1327, 1330 (5th Cir. 1995).

When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a certificate of appealability should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the prisoner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists reviewing this case could not disagree that Petitioner's claims are without merit. Accordingly, the Court should deny a certificate of appealability.

RECOMMENDATION

The undersigned accordingly recommends that a writ of habeas corpus be denied, this action be dismissed with prejudice, and that a COA be denied *sua sponte*.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

**So ORDERED and SIGNED this 16th day of October, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE